DECISION
Plaintiff has appealed the real market value (RMV) of his home for the 2008-09 tax year. Trial in the matter was held by telephone July 22, 2009. Plaintiff appeared on his own behalf. Defendant was represented by Darlene Lufkin, Chief Appraiser, Wasco County Assessor's office.
 I. STATEMENT OF FACTS
The appeal involves Plaintiffs home, a 3242 square foot residential structure with two bedrooms and three bathrooms, on a 0.4 acre view lot overlooking the Columbia River. Construction of the home began in mid-2006, and was completed on or about March 2007. The property is identified in the assessor's records as Account 17098.
The main level of the home is 1848 square feet, with a living room, dining room, kitchen, den, utility room, one bedroom, and two bathrooms. (Def's Ex A at 3; Ptf's Ex 4-13.) The home has a 1394 square foot basement that is mostly finished, which has an additional bedroom, bathroom, family room, and mechanical room. (Id.) The basement floor is concrete, and does not have floor coverings or base trim molding. The total finished heated area of the home is 3242 square feet. In addition, there is a 682 square foot attached garage, a 284 square foot *Page 2 
covered deck, and 328 square feet of exterior concrete flat work, which includes a covered patio and concrete stairway.
Plaintiff purchased a 0.86 acre parcel for $89,999 in July 2005. (Ptf's Compl at 4.) Plaintiff subsequently divided the property into two lots, one 0.46 acres and the other 0.4 acres. Plaintiffs home is on the 0.4 acre lot. The lot is serviced by city water and sewer, and public utilities including electricity, telephone, and cable television. The lot is rectangular in shape, and considerably deeper than it is wide (approximately 210 feet deep and 75 feet wide), with a slight slope at one end (the north) farthest from the house towards the back of the lot. The property affords a good view of the Columbia River, but also sits on a bluff atop a Tygh Plant and a rail yard that generates a creosote smell and noise from the loading and unloading of railroad cars. Additionally, there are five properties adjoining the subject, four of which are improved with manufactured dwellings, while the subject is a stick built home.
Plaintiff submitted a construction contract dated April 18, 2006, pursuant to which the builder agreed to construct Plaintiffs home for the sum of $293,303. (Ptf's Ex 2-1; 2-3.) According to the checks issued by the lender, Washington Federal Savings (for the construction of the home), the first payment, for $25,132.50, was made June 14, 2006, and the final payment of $17,280.86 was made March 22, 2007. (Ptf's Exs 3-3; 3-4.) The total amount of the payments came to $281,103.58. (Id. at 3-4.) Plaintiff testified to $1,300 of additional costs for a water/sewer hookup and electricity service, bringing the total reported costs to $282,403.58.
The assessor set the RMV of the subject property at $454,740, with $113,800 allocated to the land and $340,940 to the improvement (the home). (Ptf's Compl at 3.) The RMV includes $55,330 of "exception value," which represents the assessor's determination of the market value added to the property for the completion of the home in 2007. (Id.) The property's maximum *Page 3 
assessed value (MAV) is $233,014. (Id.) Because that number is less than the RMV, the property's assessed value (AV) is $233,014. (Id.) Plaintiff appealed the values to the county board of property tax appeals (board), and the board sustained the assessor's values. (Id.) Plaintiff appealed the board's determination to this court, requesting a reduction in RMV to $400,000, and an AV of $204,000. Defendant has asked the court to sustain the roll values.
 II. ANALYSIS
The issue is the RMV of the subject property as of the January 1, 2008, assessment date for the 2008-09 tax year. ORS 308.007 (defining assessment year, tax year, and assessment date); ORS 308.210(1) (requiring the assessor to value property each year on January 1 of the assessment year).
RMV for property tax purposes is defined by statute as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS308.205(1).[1] The administrative rule promulgated by the Oregon Department of Revenue instructs that the three approaches to value — sales comparison, cost, and income — be considered in determining a property's value, but recognizes that all three approaches may not be applicable in a given case. OAR 150-308.205-(A).[2] Because the subject property is owner occupied and does not generate any income, the income approach was discarded by both parties.
The cost approach is well suited for new homes. Magno v. Dept. of Rev.,19 OTR 51, 55 (2006) (quoting Appraisal Institute, The Appraisal of RealEstate 63 (12th ed 2001), for the accepted rule in appraisal that "[t]he cost approach is `particularly useful in valuing new or *Page 4 
nearly new improvements'"). The Institute's treatise explains that "[i]n the cost approach, the value of a property is derived by adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements and then subtracting the amount of depreciation * * * in the structures from all causes." Id.
A. Plaintiff's Value Estimate
Plaintiff asserts the RMV is approximately $400,000. Plaintiff submitted an independent fee appraisal report that estimates the value of the property at $415,000. (Ptf's Ex 4-3.) That appraisal report was completed on March 28, 2006, before the home was constructed, and was based on the proposed construction. (Ptf's Exs 4-2; 4-3.) Some of the features in the plan designs were not built into the home. The appraiser also erroneously reports the size of the lot at 0.86 acres, whereas Plaintiff divided the lot roughly in half, and his home is on 0.4 acres. Plaintiff would have the court reduce the appraiser's $415,000 value estimate by $60,000 to account for the error in the size of his lot. That adjustment comes from a reduction in the appraiser's $120,000 land value estimate under the cost approach, and results in a final overall value conclusion of $355,000.
Plaintiff estimates the value to be $359,600 under a cost approach. Plaintiff arrives at that number by taking his independent fee appraiser's cost value estimate of $419,600, and subtracting one-half of the appraiser's $120,000 site value, because of the appraiser's lot size error discussed above. (Ptf's Exs 4-4; 4-3.) Plaintiff buttresses his value of the cost approach by pointing to his actual costs of approximately $282,404 for the construction of the home in 2006 and 2007, plus $60,000 for the value of the lot, for a total "cost" of $342,404.
Plaintiff, who is a real estate broker, also presented four comparable sales occurring between September 2006 and August 2007 at prices ranging from a low of $410,000 for a *Page 5 
June 2007 sale, to a high of $445,000 for an October 2006 sale. Plaintiff testified that his best comparable sale is the property at 2114 Garrison, The Dalles, Oregon, which sold August 14, 2007, for $412,500 after being on the market for 345 days. (Ptf's Ex 7-1.) That property sits on a slightly larger lot (0.51 acres), and has one more bedroom, but was built in 1999, seven years before the subject property was constructed.
B. Defendant's Value Estimate
Defendant asserts the RMV is $454,740. (Def s Ex A at 2.) Defendant valued the property under the cost approach and the comparable sales approach in arriving at its value opinion. (Def s Ex A at 1, 2.) Defendant placed primary emphasis on the market related cost approach in reconciling its value opinion under the two approaches, because the home is new. However, both of Defendant's approaches yielded nearly identical values ($454,740 under cost approach; $454,230 under market approach). (Def s Ex A at 1, 2.)
Defendant's market approach analyzed 10 bare land sales to arrive at a bare land value estimate for the subject property of $122,000, plus $1,000 for on-site developments, for a total land value estimate of $123,000. (Def s Ex A at 8, 9.) One of the sales occurred in 2006, six of the sales in 2007, and three in 2008. (Def s Ex A 8, 11.)
In estimating the total value of the property under the market approach, Defendant analyzed three comparable sales occurring between April 30, 2007, and November 8, 2007, with actual, unadjusted sale prices ranging from a low of $370,000 to a high of $417,000. (Def s Ex A at 25-26.) Defendant made certain adjustments for differences between the comparable sales and the subject property and arrived at a tight range of value of between $452,320 and $454,235. (Id.) Defendant found comparable sale number one to be most similar to the subject, and placed *Page 6 
greatest weight on that sale, concluding that the indicated value for Plaintiffs property under the market comparison approach is $454,230. (Id.)
For its cost approach, Defendant used the Oregon Department of Revenue 1993 residential cost factor book values. (Def s Ex A at 32.) Under that method, Defendant established and adjusted base cost for Plaintiffs home of $140,521, multiplied by a local cost modifier of 0.85 (a location adjustment to account for differences between the Portland metropolitan area and the area of the subject), and a cumulative time trend of 2.3437 (recognizing a rise in the market between 1993 and 2008), for a final improvement value estimate of $340,940. (Id. at 33.) Adding its market derived land value estimate of $113,800, Defendant arrived at a final value estimate under the cost approach of $454,740. (Id.)
C. The Court's Reconciliation
Each side presented evidence indicating that there is at least some slight error in the values on the roll. The court's task, as set forth in the statute, is "to determine the real market value * * * on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.
The court concludes that Defendant has the better evidence of land RMV at $123,000, because Defendant's evidence is derived from the market, using 2007 sales, whereas Plaintiff relied on his fee appraiser's 2006 land value estimate that was based on the value of the lot before Plaintiff divided the property in half. That appraiser did not appear at trial to explain either the discrepancy in the size of the land or the method used in arriving at his land value estimate. Moreover, there were rises in the market between that appraiser's March 2006 value estimate and the January 1, 2008, assessment date. *Page 7 
Turning to the improvement value, the court finds Plaintiffs costs a better starting point for the value of the home. However, because the home was completed in March 2007, and the assessment date is January 1, 2008, an adjustment is necessary for the rise in the market. According to Defendant's market trend data, there was a 1.13 percent increase in the market between 2007 and 2008. (Def s Ex A, Addendum at A3 and A4.) Adjusting Plaintiffs actual costs of $282,404 for the relevant nine-month interval between the completion date and the assessment date generates an estimated value for the home of approximately $310,000.
Adding Defendant's $123,000 land RMV to Plaintiffs court-adjusted improvement cost estimate of $310,000, results in a total RMV of $433,000, which is $21,740 below the current total RMV on the assessment and tax rolls for the 2008-09 tax year. The exception RMV shall, therefore, be reduced from $55,330 to $33,190. According to the court's calculation, the change property ratio for exception RMV for 2008 used to arrive at exception MAV was 0.5350, which, when applied to the reduced exception RMV of $33,190, results in a exception MAV of $17,756. Defendant shall verify the exception MAV and adjust that number accordingly. Finally, Defendant shall reduce Plaintiffs AV commensurate with the above value reductions.
 III. CONCLUSION
The court concludes that the RMV of Plaintiff s property as of January 1, 2008, is $433,000, with $123,000 allocated to the land, and $310,000 to the improvement. The court further concludes that Plaintiffs exception RMV is $33,190. Defendant shall apply the appropriate change property ratio to the exception RMV to determine the exception MAV and final overall AV. Now, therefore, *Page 8 
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal is granted in part as set forth above.
Dated this ___ day of December 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on December 16,2009. The Court filed and entered this document on December 16, 2009.
[1] All references to the Oregon Revised Statutes (ORS) are to 2007.
[2] All references to the Oregon Administrative Rules (OAR) are to the current rules. *Page 1